IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FELICIA KAY HARL                                                                                    PLAINTIFF

v.                                           CASE NO.  2:11-CV-02241

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on August 9, 2009 (T. 11), alleging an onset date of January 30, 2007 (T. 119), due to plaintiff's Thoracic Outlet Syndrome[1] and Back Pain (T. 149).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on September 29, 2010.  Plaintiff was present and represented by counsel.

---

[1] Thoracic outlet syndrome is a term used to describe pain in the arm, shoulder, and neck. It can be caused from compression of the brachial plexus or compression of the subclavian artery. Look here for more information: http://www.ninds.nih.gov/disorders/thoracic.htm

At the time of the administrative hearing, plaintiff was 43 years of age and possessed a High School Education. The Plaintiff had past relevant work ("PRW") experience as a cashier and forklift operator (T. 150).

On December 9, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's Degenerative Disk Disease and Obesity did not meet or equal any Appendix 1 listing. T. 15. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work T. 16. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations of fishing accessory maker, plumbing fitting finisher, and filing machine operator. T. 19-20.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

The Plaintiff contends that the ALJ committed error in determining the Plaintiff's RFC by failing to develop the record properly and improperly discounting her subjective complaints.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ determined that the Plaintiff had the RFC to perform Light Work (T. 16). 20 C.F.R. § 404.1567 defines light work as:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of

time.

Dr. Bill F. Payne, a non-examining consultive physician, provided a physical RFC assessment on January 27, 2010. Dr. Payne found that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk and sit for six hours in an eight hour workday and had no limitations on her ability to push and/or pull (T. 286). Dr. Payne offered NO explanation as to how and why the evidence supported his conclusion. (Id.). Dr. Payne found no postural limitations (T. 287), no Manipulative Limitations (T. 288), and no Environmental Limitations (T. 289). Dr. Payne had the x-rays from 02/6/07; MRI from 3/14/07; Progress Reports from 3/27/07 and 7/17/07; MRI from 4/22/09; and o/v notes from 01/06/10 (T. 283-284).

Dr. Jim Takach, a non-examining consultive physician, provided a physical RFC assessment on May 24, 2010. Dr. Takach found that the Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, could stand and/or walk for at least 2 hours in an 8 hour day and could sit for 6 hours in an 8 hour day, and that she had no limitations on her ability to push and/or pull (T. 304). Dr. Takach found the Plaintiff to have occasional Postural Limitations and that she should never climb a ladder/rope/scaffolds (T. 305). He also found that she had some Manipulative Limitations in her ability to reach (T. 306).

Dr. Takach explained that the evidence supporting his conclusion was the Plaintiff "hx of Obesity (BMI-43) and DLS Disc Dz with DDD and small LS HNP -w/o Neuro deficits on exams- PVMT/LROM DLS - undergoing conservative Rx. Hx of TOS with pain & weakness on overhead reaching w/o defined sequelae currently. From the MER available- she retains the ability to function at SEDENTARY exertion." (T. 304).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). The ALJ held that the he did not accord the opinions of Dr. Payne or Dr. Takach significant probative weight because they were "brief, devoid of any rationale or findings of fact and conclusory in nature." He also found that their findings were inconsistent with the evidence of the record as a whole. (T. 18). Interestingly the ALJ does not try to differentiate between the two divergent RFC assessments but discounts both.

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). The ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700 at 704 (8th Cir.2001). " 'An administrative law judge may not draw upon his own inferences from medical reports.' " *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000) (quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

A treating source from Sparks Regional Medical Center diagnosed Plaintiff with only acute lumbar strain with spasm (Tr. 231) after she reported that a dryer fell on her in 2007. An MRI of the lumbar spine was performed in March 2007 indicating a left-sided protrusion /

herniation at L5-S 1. (T. 228). X-rays taken at Sparks Medical Plaza on March 2, 2007, indicated narrowing of the disc space at L5-S 1 with posterior spondylolisthesis and loss of the normal lordotic curvature of the lumbar spine with straightening. (T. 234). Spondylolisthesis is a condition in which a bone (vertebra) in the spine slips out of the proper position onto the bone below it. Her treating physician merely prescribed physical therapy three times per week for six weeks in July 2007 but he also noted that she should see a "spine specialist as soon as possible" (T. 235).

A second MRI completed in April of 2009 confirmed the existing left-sided disc protrusion at L5-S 1 without canal stenosis or obvious nerve root compression. (T. 246). Also noted was the possibility of an existing protrusion at T9-T1O. (id.). Doctors at the St. Edward Mercy Clinic indicated that the Plaintiff's weight was 218 pounds (obese) and that her physical examination revealed "positive straight leg raises at less than forty-five (45) degrees for bilateral lower extremities." (T. 254). The Doctors assessment indicated that she suffered from low back pain with reticular symptoms which were non-responsive to prior treatment. (id.).

In November 2009 the Plaintiff saw Dr. Arthur Johnson at the River Valley Musculoskeletal Center. Dr. Johnson specializes in Neurological Surgery[2] and considered the Plaintiff's previous MRI (T. 260). Dr. Johnson diagnosed the Plaintiff with Lumbago[3] and Morbid Obesity and his recommended treatment was physical therapy and weight loss but did

---

[2] (See http://www.armedicalboard.org/public/verify/results.aspx?strPHIDNO=ASMB16741)

[3] A painful condition of the lower back, as one resulting from muscle strain or a slipped disk. (See http://medical-dictionary.thefreedictionary.com/lumbago)

prescribe Ultram[4] and Flexeril[5].  (T. 260). Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists (See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527) but Dr. Johnson did not express an opinion on the Plaintiff ability to perform work related activity.

Also the Plaintiff's straight leg test was normal in April 2010 (T. 295), her alr was negative, and her reflexes were fine. (T. 297). It certainly appears that there is conflicting medical information in the record but none of the Plaintiff's treating physicians were asked to make a physical residual functional capacity assessments.  If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994), but, in this case, the court believes that remand is necessary to allow the ALJ to address specific inquiries to obtain an RFC from the Plaintiff's treating physician.

 **IV.   Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter

---

[4]Ultram (tramadol) is a narcotic-like pain reliever used to treat moderate to severe pain.

[5]Flexeril (cyclobenzaprine) is a muscle relaxant.

should be remanded to the Commissioner for further consideration.

      Dated this November 14, 2012.

                                          /s/ J. Marschewski
                                      HONORABLE JAMES R. MARSCHEWSKI
                                      CHIEF U. S. MAGISTRATE JUDGE